IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA and<br><br>and<br><br>STATE OF OHIO, EX REL.<br>D. ANDREW WILSON,<br>ATTORNEY GENERAL OF OHIO,<br><br>Plaintiffs,<br><br>v.<br><br>RENERGY, INC.,<br>DOVETAIL ENERGY, LLC, AND<br>EMERALD BIOENERGY, LLC,<br><br>Defendants | CIVIL ACTION NO.:2:26-cv-1286 |

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States, and acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Ohio, by the authority of the Attorney General of the State of Ohio, acting at the request of the Ohio Environmental Protection Agency ("Ohio EPA") and the Regional Air Pollution Control Agency (together, "Ohio"), file this Complaint and allege the following:

**NATURE OF ACTION**

1. This is a civil action for injunctive relief and civil penalties for violations of the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and for violations of Ohio Rev. Code § 3704.05, at two anaerobic digester facilities in Fairborn and Cardington, Ohio, owned and operated by Dovetail Energy LLC, Emerald Bioenergy LLC, and Renergy, Inc. ("Defendants"). The anaerobic

digester facilities emit pollutants which have the potential to endanger the public health or welfare, such as sulfur dioxide, hydrogen sulfide, methane, and volatile organic compounds. Exposure to sulfur dioxide or hydrogen sulfide can cause adverse respiratory effects and other health impacts.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and Clean Air Act Section 113(b), 42 U.S.C. § 7413(b).

3. This Court has supplemental jurisdiction over the state law claims asserted by Ohio pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), because the Defendants reside and are found in this District and because the violations occurred within this District.

## NOTICES

5. Pursuant to Clean Air Act Section 113(a)(1), 42 U.S.C. § 7413(a)(1), EPA notified Defendants and the State of Ohio of the violations of the Ohio State Implementation Plan alleged in this Complaint more than 30 days prior to its filing.

6. The United States has provided notice of the commencement of this action to the State of Ohio as required by Clean Air Act Section 113(b), 42 U.S.C. § 7413(b).

## DEFENDANTS

7. Renergy, Inc. (Renergy) is a corporate entity organized under the laws of Ohio and therefore a “person” within the meaning of Clean Air Act Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e), Ohio Rev. Code § 3704.01(P), and Ohio Admin. Code § 3745-15-01.

8. Dovetail Energy, LLC ("Dovetail Energy") is a corporate entity organized under the laws of Ohio and therefore a "person" within the meaning of Clean Air Act Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e), Ohio Rev. Code § 3704.01(P), and Ohio Admin. Code § 3745-15-01.

9. Emerald Bioenergy, LLC ("Emerald Bioenergy") is a corporate entity organized under the laws of Ohio and therefore a "person" within the meaning of Clean Air Act Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e), Ohio Rev. Code § 3704.01(P), and Ohio Admin. Code § 3745-15-01.

10. Renergy and Dovetail Energy own and, at all times relevant to this Complaint, operated the anaerobic digester system that produces biogas for electricity generation at 1156 Herr Road, Fairborn, Ohio (the "Dovetail Facility").

11. Renergy and Emerald Bioenergy own and operate the anaerobic digester system that produces biogas for electricity generation at 2279 County Road 156, Cardington, Ohio (the "Emerald Facility").

## STATUTORY AND REGULATORY BACKGROUND

12. Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

### National Ambient Air Quality Standards ("NAAQS")

13. Section 108(a) of the Clean Air Act, 42 U.S.C. § 7408(a), requires EPA to list, and issue air quality criteria for, each air pollutant that may endanger public health or welfare and results from numerous or diverse mobile or stationary sources.

14. Section 109(a) of the Clean Air Act, 42 U.S.C. § 7409, requires EPA to promulgate regulations establishing primary and secondary NAAQS for those air pollutants for

which air quality criteria have been issued pursuant to Section 108 of the Clean Air Act. Under Section 109(b) of the Clean Air Act, 42 U.S.C. § 7409(b), the primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

15. Pursuant to Sections 108 and 109 of the Clean Air Act, 42 U.S.C. §§ 7408 and 7409, EPA listed and issued air quality criteria and NAAQS for, *inter alia*, sulfur dioxide. The primary NAAQS for sulfur dioxide is 75 parts per billion measured as the annual 99th percentile of 1-hour daily maximum concentrations, averaged over three years. The secondary NAAQS for sulfur dioxide is 10 parts per billion measured as an annual mean, averaged over three years.

16. Pursuant to Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is deemed an “attainment” area. An area that does not meet the NAAQS for a particular pollutant is deemed a “non-attainment” area. Air quality designations for states are approved by EPA and can be found at 40 C.F.R. Part 81.

17. Section 110 of the Clean Air Act, 42 U.S.C. § 7410, requires each State to adopt and submit to EPA for approval a plan that provides for the attainment and maintenance of the NAAQS in each air quality control region within each state. This plan is known as a State Implementation Plan (“SIP”).

18. Pursuant to Section 110 of the Clean Air Act, 42 U.S.C. § 7410, states adopt and submit to EPA for approval various rules for the attainment and maintenance of the NAAQS. After such provisions are approved by EPA, these provisions constitute a state’s “applicable

implementation plan," within the meaning of Sections 113(b) and 302(q) of the Clean Air Act, 42 U.S.C. §§ 7413(b) and 7602(q), and are considered the SIP.

19. SIPs are enforceable by both the states in which they are adopted and, pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), by the United States.

20. Under 40 C.F.R. § 52.23, any permit limitation or condition contained within a permit issued under an EPA-approved program that is incorporated in a SIP, is a requirement of the SIP, and is federally enforceable under Section 113.

**Ohio State Implementation Plan**

21. Under Clean Air Act Section 110, 42 U.S.C. § 7410, Ohio adopted and submitted to EPA various regulations that EPA approved and which, taken together, constitute the SIP for the State of Ohio ("Ohio SIP"). The regulations that constitute the Ohio SIP, including the portions of Ohio Administrative Code 3745-31 relevant to this matter, are listed in 40 C.F.R. Part 52, Subpart KK.

22. On March 22, 2013, EPA approved, with specified exceptions, Ohio's Permit to Install and Operate ("PTIO") program as part of the federally enforceable SIP for Ohio (78 FR 11748), and approved revisions to the PTIO program periodically thereafter.

23. Ohio Rev. Code § 3704.03 and Ohio Admin. Code § 3745-31-05 allow the Ohio EPA to issue permits for installation, modification, and operation of new and existing air contaminant sources, such as the anaerobic digester systems at issue here, containing terms and conditions to ensure achievement and maintenance of applicable air quality standards, with each such permit being a permit to install ("PTI") or a permit to install and operate ("PTIO").

**Federal Enforcement Provisions**

24. Pursuant to Clean Air Act Section 113(a)(1), 42 U.S.C. § 7413(a)(1), EPA may bring a civil action in accordance with Clean Air Act Section 113(b), 42 U.S.C. § 7413(b),

whenever, on the basis of any information available to EPA, EPA finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, an applicable SIP or a permit issued pursuant to an applicable SIP.

25. The United States Department of Justice has authority to bring this action on behalf of the Administrator of EPA under 28 U.S.C. §§ 516 and 519 and Clean Air Act Section 305(a), 42 U.S.C. § 7605(a).

26. Under Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and under the Federal Civil Penalties Inflation Adjustment Act of 1990, the United States may seek civil penalties of up to $124,426 per day for each such violation that occurred after November 2, 2015. 40 C.F.R § 19.4.

27. Clean Air Act Section 113(e)(2), 42 U.S.C. § 7413(e)(2), provides that penalties shall continue to accrue until the violator establishes that continuous compliance has been achieved.

**State Enforcement Provisions**

28. Pursuant to Ohio Rev. Code § 3704.05(C), no person who is the holder of a permit issued under division (F) or (G) of Ohio Rev. Code § 3704.03 shall violate any of its terms or conditions.

29. Pursuant to Ohio Rev. Code § 3704.06(B), the Attorney General of State of Ohio, upon request of the Director of the Ohio Environmental Protection Agency, shall bring an action for an injunction, a civil penalty, or any other appropriate proceedings in any court of competent jurisdiction against any person violating or threatening to violate Ohio Rev. Code § 3704.05.

30. Pursuant to Ohio Rev. Code § 3704.06(C), a person who violates Ohio Rev. Code § 3704.05 shall pay a civil penalty of not more than $25,000 for each day of each violation.

## Defendants' Facilities

A. The Dovetail Facility

31. The Dovetail Facility contained, among other emission sources, an anaerobic digester with a flare and an internal combustion engine powered by biogas (together, the "Dovetail anaerobic digester system").

32. The Dovetail Facility ceased operations on February 14, 2024.

i. *The PTIO for the Dovetail Facility's Flare*

33. Ohio EPA issued PTIO No. P0124072 to Renergy ("Dovetail PTIO"), which established conditions for the flare employed in Dovetail's anaerobic digester system. The PTIO was effective on April 9, 2018.

34. The Dovetail PTIO established a limit of 1,000 parts per million volume ("ppmv") concentration of hydrogen sulfide in the digester gas sent to the flare. Dovetail PTIO, Condition C.2.c)(1).

35. The Dovetail PTIO required Defendants to disclose, in their Permit Evaluation Reports ("PERs"), instances when the concentration of hydrogen sulfide in the digester gas burned in the flare exceeded 1,000 ppmv. Dovetail PTIO, Condition C.2.e)(3)c.

36. The Dovetail PTIO required that Defendants refrain from combusting digester gas in the flare with a heat content of less than 500 British thermal units per standard cubic foot ("Btu/scf"). Dovetail PTIO, Condition C.2.c)(2).

37. The Dovetail PTIO required Defendants to vent emissions to the flare when the engine is not firing digester gas, to prevent pressure buildup that would result in emergency venting to the atmosphere. Dovetail PTIO, Condition C.2.b)(2)c.

38. The Dovetail PTIO required that Defendants request authorization before shutting down the flare while the digester was operating. Dovetail PTIO, Condition A.9.

ii. *The PTIO Modification for the Dovetail Facility's Engine*

39. Ohio EPA issued an administrative modification to the Dovetail PTIO ("Dovetail Modification"), designated number P0127783, which updated the provisions for the engine. The modification was effective January 15, 2020.

40. The Dovetail Modification established a limit of 1,000 ppmv concentration of hydrogen sulfide in the digester gas sent to the engine. Dovetail Modification, Condition C.1.c)(2).

41. The Dovetail Modification required Defendant to disclose, in its PERs, instances when the concentration of hydrogen sulfide in the digester gas burned in the engine exceeded 1,000 ppmv. Dovetail Modification, Condition C.1.e)(3)c.

42. The Dovetail Modification required that Defendant refrain from combusting digester gas in the engine with a heat content of less than 500 Btu/scf. Dovetail Modification, Condition C.1.c)(1).

B. <u>The Emerald Facility</u>

43. The Emerald Facility contains, among other emission sources, an anaerobic digester with a flare and an internal combustion engine powered by biogas (together, the "Emerald anaerobic digester system").

i. *The PTIO for the Emerald Facility's Anaerobic Digester System*

44. Ohio EPA issued PTIO No. P0125003 to Renergy ("Emerald PTIO"), which established conditions for the Emerald anaerobic digester system. The PTIO was effective on November 19, 2018, pursuant to Ohio Rev. Code § 3704.03 and Ohio Admin. Code Chapter 3745-31,

45. The Emerald PTIO establishes a limit of 1,000 ppmv concentration of hydrogen sulfide in the digester gas sent to the flare. Emerald PTIO, Condition C.2.c)(1).

46. The Emerald PTIO requires that Defendants refrain from combusting digester gas in the flare with a heat content of less than 500 Btu/scf. Emerald PTIO, Condition C.2.c)(2).

47. The Emerald PTIO requires that Defendants refrain from combusting digester gas in the engine with a heat content of less than 500 Btu/scf. Emerald PTIO, Condition C.1.c)(1).

48. The Emerald PTIO requires Defendants to disclose, in their PERs, each month when digester gas was combusted in the flare with a heat content of less than 500 Btu/scf. Emerald PTIO, Condition C.2.e)(3)b.

49. The Emerald PTIO requires Defendants to disclose, in their PERs, each month when digester gas was combusted in the engine with a heat content of less than 500 Btu/scf. Emerald PTIO, Condition C.1.e)(3)b.

50. Pursuant to Ohio Admin. Code § 3745-31-05(A)(3), the Emerald PTIO establishes an emissions limit of 0.33 pounds of sulfur dioxide per million Btu from the flare. Emerald PTIO, Condition C.2.b)(1)a.

51. The Emerald PTIO requires Defendants to vent emissions to the flare when the "heat and power unit is not firing digester gas" to prevent pressure buildup that would result in emergency venting to the atmosphere. Emerald PTIO, Condition C.2.b)(2)c.

52. The Emerald PTIO, pursuant to Ohio Admin. Code § 3745-15-06(A)(3), requires that Defendants request authorization before shutting down the flare while the digester was operating. Emerald PTIO, Condition A.9.

C. The Operation of the Dovetail and Emerald Anaerobic Digestion Systems

53. The facilities were each designed to receive food waste, manure, and, previously, biosolids, to generate biogas, which in turn can be combusted in the engine to generate electricity. When biogas is combusted, most of its constituents are converted predominantly to

carbon dioxide, while the hydrogen sulfide in the biogas is converted predominantly to sulfur dioxide. The combustion products are then released into the atmosphere.

54. The requirement in the PTIOs to combust the biogas, coupled with the limits in the PTIOs on the content of the biogas bound for combustion and on emissions released to the atmosphere after combustion, served to control emissions of pollutants which have the potential to endanger the public health or welfare, such as sulfur dioxide, hydrogen sulfide, methane, and volatile organic compounds. Exposure to sulfur dioxide or hydrogen sulfide can cause adverse respiratory effects and other health impacts.

55. When Defendants operated the digester units without combusting biogas in either the flare or the engine, it was vented directly into the atmosphere, releasing uncontrolled pollutants such as hydrogen sulfide, methane, and volatile organic compounds.

56. Venting biogas directly into the atmosphere releases pollutants that have the potential to harm human health or welfare.

57. Defendants vented hydrogen sulfide, methane, and volatile organic compounds directly into the atmosphere on numerous occasions. This occurred when (1) both the flare and engine were offline due to mechanical and operational issues and pressure within the gas dome had to be released; or (2) the methane content of the biogas was within the explosive limit range and Defendants failed to augment the biogas, as the PTIOs authorized, to allow for safe combustion.

58. Biogas bound for combustion in the flare or engine can contain concentrations of hydrogen sulfide greater than 1,000 ppmv. Hydrogen sulfide at such concentrations, when combusted, may yield excess sulfur dioxide emissions and have the potential to harm human health or welfare.

59. The concentration of hydrogen sulfide in the digester gas sent to the Dovetail Facility's flare or engine exceeded 1,000 ppmv on January 7, 2019.

60. The hydrogen sulfide concentration in the digester gas sent to the Emerald Facility's flare exceeded 1,000 ppmv on 76 days between December 8, 2021 and April 29, 2022. Concentrations of hydrogen sulfide at both facilities have at times exceeded 2,000 ppmv.

61. Biogas bound for combustion in the flare or engine with a heat content below 500 Btu/scf may result in excess emissions of pollutants, including sulfur dioxide, and has the potential to harm human health or welfare.

62. Defendants combusted digester gas in the Emerald Facility's flare with a heat content under 500 Btu/scf on 55 days between December 10, 2021 and April 29, 2022.

63. Sulfur dioxide emissions from the Emerald Facility's flare exceeded 0.33 pounds per million Btu on 56 days between December 8, 2021 and April 29, 2022.

**General Allegations**

64. Renergy and Dovetail Energy are the "owners or operators" of the Dovetail Facility within the meaning of the Clean Air Act.

65. Renergy and Emerald Bioenergy are the "owners or operators" of the Emerald Facility within the meaning of the Clean Air Act.

66. A "stationary source" is any building, structure, facility, or installation which emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

67. The Facilities are "sources" and "stationary sources" as those terms are defined at Section 111(a) of the Clean Air Act, 42 U.S.C. § 7411(a). See 42 U.S.C. § 7412(a)(3).

68. Hydrogen sulfide, sulfur dioxide, methane, and volatile organic compounds are "air contaminants" as that term is defined in Ohio Admin. Code 3745-31-01.

## FIRST CLAIM FOR RELIEF
## Ohio SIP Violation: Improper Venting of Biogas to the Atmosphere

69. Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

70. Between June 29, 2020 and October 5, 2021, while the Dovetail Facility's engine was non-operational, Defendants Renergy and Dovetail Energy failed to send gas to the Dovetail Facility's flare, in violation of Condition C.2.b)(2)c of the Dovetail PTIO.

71. Between June 29, 2020 and October 5, 2021, Defendants Renergy and Dovetail Energy shut down the Dovetail Facility's flare without authorization from the permitting authority, in violation of Condition A.9 of the Dovetail PTIO.

72. Between June 21, 2020 and December 6, 2021, while the Emerald Facility's engine was non-operational, Defendants Renergy and Emerald Bioenergy failed to send gas to the Emerald Facility's flare, in violation of Condition C.2.b)(2)c of the Emerald PTIO.

73. Between June 21, 2020 and December 6, 2021, Defendants Renergy and Emerald Bioenergy shut down the Emerald Facility's flare without authorization from the permitting authority, in violation of Condition A.9 of the Emerald PTIO.

74. Unless restrained by an Order of the Court, Defendants' violations, as set forth in this Claim for Relief, are likely to reoccur.

75. As a result of the above-listed violations, pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendants are liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 28.

## SECOND CLAIM FOR RELIEF
## Ohio SIP Violation: Excess Hydrogen Sulfide Concentration in the Biogas

76. Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

77. On January 7, 2019, Defendants Renergy and Dovetail Energy exceeded 1,000 ppmv concentration of hydrogen sulfide in the digester gas sent to the Dovetail Facility's flare and engine, in violation of Condition C.2.c)(1) of the Dovetail PTIO and Condition C.1.c)(2) of the Dovetail Modification, respectively.

78. On 76 days between December 8, 2021 and April 29, 2022, Defendants Renergy and Emerald Bioenergy exceeded 1,000 ppmv concentration of hydrogen sulfide in the digester gas sent to the Emerald Facility's flare, in violation of Condition C.2.c)(1) of the Emerald PTIO.

79. Unless restrained by an Order of the Court, Defendants' violations, as set forth in this Claim for Relief, are likely to reoccur.

80. As a result of the above-listed violations, pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendants are liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 28.

**THIRD CLAIM FOR RELIEF**
**Ohio SIP Violation: Insufficient Heat Content in the Biogas**

81. Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

82. On January 11, 2019 and April 22, 2019, Defendants Renergy and Dovetail Energy combusted digester gas in the Dovetail Facility's flare with a heat content of less than 500 Btu/scf, in violation of Condition C.2.c)(2) of the Dovetail PTIO.

83. On January 11, 2019 and April 22, 2019, Defendants Renergy and Dovetail Energy combusted digester gas in the Dovetail Facility's engine with a heat content of less than 500 Btu/scf, in violation of Condition C.1.c)(1) of the Dovetail Modification.

84. On 55 days between December 10, 2018 and April 29, 2022, Defendants Renergy and Emerald Bioenergy combusted digester gas in the Emerald Facility's flare with a heat content of less than 500 Btu/scf, in violation of Condition C.2.c)(2) of the Emerald PTIO.

85. On 52 days between December 10, 2018 and June 21, 2020, Defendants Renergy and Emerald Bioenergy combusted digester gas in the Emerald Facility's engine with a heat content of less than 500 Btu/scf, in violation of Condition C.1.c)(1) of the Emerald PTIO.

86. Unless restrained by an Order of the Court, Defendants' violations, as set forth in this Claim for Relief, are likely to reoccur.

87. As a result of the above-listed violations, pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendants are liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 28.

**FOURTH CLAIM FOR RELIEF**
**Ohio SIP Violation: Excess Sulfur Dioxide Emissions from Flare Operations**

88. Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

89. On 56 days between December 8, 2021 and April 29, 2022, Defendants Renergy and Emerald Bioenergy emitted sulfur dioxide from the Emerald Facility's flare in excess of 0.33 lb/mmBtu, in violation of Condition C.2.b)(1)a of the Emerald PTIO.

90. Unless restrained by an Order of the Court, Defendants' violations, as set forth in this Claim for Relief, are likely to reoccur.

91. As a result of the above-listed violations, pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendants are liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 28.

**FIFTH CLAIM FOR RELIEF**
**Ohio SIP Violation: Failure to Report All Deviations Required by the PTIOs**

92. Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

93. Defendants Renergy and Dovetail Energy failed to report, in their 2020 PER, that they burned digester gas containing hydrogen sulfide concentration greater than 1,000 ppmv in the Dovetail Facility's flare on January 7, 2019, in violation of Condition C.2.e)(3)c of the Dovetail PTIO.

94. Defendants Renergy and Dovetail Energy failed to report, in their 2020 PER, that they burned digester gas containing hydrogen sulfide concentration greater than 1,000 ppmv in the Dovetail Facility's engine on January 7, 2019, in violation of Condition C.1.e)(3)c of the Dovetail Modification.

95. Defendants Renergy and Emerald Bioenergy failed to report, in their 2021 PER, each month during which they burned digester gas in the Emerald Facility's flare with a minimum heat content of less than 500 Btu/scf, in violation of Condition C.2.e)(3)b of the Emerald PTIO.

96. Defendants Renergy and Emerald Bioenergy failed to report, in their 2021 PER, each month during which they burned digester gas in the Emerald Facility's engine with a minimum heat content of less than 500 Btu/scf, in violation of Condition C.1.e)(3)b of the Emerald PTIO.

97. Unless restrained by an Order of the Court, Defendants' violations, as set forth in this Claim for Relief, are likely to reoccur.

98. As a result of the above-listed violations, pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendants are liable to the United States for

injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 28.

**SIXTH CLAIM FOR RELIEF**
**Ohio Supplemental Claim: Violations of Permit Terms and Conditions**

99. Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

100. On each date referenced in Claims One through Five as a violation of a permit issued by Ohio EPA, Defendants violated Ohio Rev. Code § 3704.05(C), which prohibits violation of terms or conditions of a permit issued pursuant to Ohio Rev. Code § 3704.03.

101. The conduct alleged in this Claim constitutes violations of Ohio Rev. Code § 3704.05(C), for which Defendants are liable and subject to injunctive relief pursuant to Ohio Rev. Code § 3704.06(B) and for a civil penalty of not more than $25,000 per day for each day of violation pursuant to Ohio Rev. Code § 3704.06(C), including each day of violation that occurs after the filing of this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America and the State of Ohio, respectfully request that this Court:

A. Permanently enjoin Defendants from further violations of the Clean Air Act and applicable requirements established thereunder;

B. Require Defendants to obtain and comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with the Clean Air Act and applicable requirements established thereunder;

C. Permanently enjoin Defendants, pursuant to R.C. 3704.06(B), to comply with R.C. Chapter 3704, the rules adopted thereunder, and all of its air pollution permits, including Permits PTIO No. P0124072 and PTIO No. P0127783;

D. Order Defendants to take other appropriate action to remedy, mitigate, and offset the harm to the public health and the environment caused by the violations of the Clean Air Act alleged above;

E. Assess a civil penalty against Defendants for violations of applicable provisions of the Clean Air Act as well as their implementing regulations and permits issued thereunder of up to the statutory maximum amounts referenced above in Paragraph 28;

F. Award Plaintiffs its costs and disbursements for this action; and

G. Grant Plaintiffs such other relief as the Court may deem just and proper.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

Sasha Alvarenga
_______________________________
SASHA M. ALVARENGA (Fla. 1001722)
Trial Attorney
Environmental Enforcement Section
Energy and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 532-3925
Sasha.Alvarenga@usdoj.gov

OF COUNSEL:
Hala Kuss
Associate Regional Counsel
United States EPA
Region V (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590
(312) 886-6237

Respectfully submitted,

D. ANDREW WILSON
OHIO ATTORENY GENERAL

John K. McManus (Ohio Bar #0037140)
Casey Chapman (Ohio Bar #0086286)
Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Telephone: (614) 466-2766
Facsimile: (866) 422-9187
Jack.McManus@OhioAGO.gov
Casey.Chapman@OhioAGO.gov

Attorneys for the Plaintiff, State of Ohio